[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband commenced this action seeking a dissolution of the marriage, joint custody of the parties' minor children and other relief. The defendant wife appeared by counsel, filed no answer or cross-complaint, but filed proposed orders and claims for relief, seeking alimony, joint custody of the minor children and other relief. Both parties testified; documentary evidence and financial affidavits were submitted; and the wife's father testified concerning her health insurance situation. At the conclusion of the evidence, the parties reserved the right to, and did, file briefs and other evidence relating to the nature of the wife's social security benefits and the effects an alimony award would have upon those benefits.
From the evidence, the court finds the following facts: CT Page 9968
The plaintiff husband married the defendant wife, whose maiden name was Cynthia Hoff, on June 4, 1978 in South Windsor, Connecticut. The husband has resided continuously in the State of Connecticut for at least one year before the date of his complaint, which is dated August 10, 1992. All statutory stays have expired and this court has jurisdiction.
The parties have three minor children, issue of the marriage. Their names and dates of birth are: Heather, born October 8, 1978; Paul, born November 27, 1980; and Justin, born October 7, 1984. No other minor children have been born to the defendant wife since the date of the marriage of the parties. Neither the plaintiff nor the defendant nor any of the minor children receive public assistance from the State of Connecticut or any subdivision thereof.
The husband is 46 years of age, and a high school graduate, with two years of college. He has not acquired sufficient credits for an associates' degree, but has attended classes at Hartford State Technical School and has had on-the-job training. His health is good and he presently is employed as a mechanical designer for Tech-Aid. The character of his employment is that he works as a temporary employee on a contract basis on different jobs for different employers that last anywhere from weeks to months at a time. He enjoys no job-related benefits, such as health and medical insurance, pension benefits, life insurance, etc. and his employment is punctuated by periods of unemployment. He has sought direct employment, with such benefits, but has been unable to obtain suitable employment with sufficient salary to meet the family's needs. Despite the checkered nature of his employment history, he was able to earn $48,000 in gross income in 1992, and $29,000 in gross income in 1993 as of the date of this trial, despite being unemployed for substantial periods of time. He anticipates his present job ending in a matter of weeks or months, but when employed he earns upwards of $22.50 per hour. He also has earned gross income of $54,000 in 1990, and grossed about $42,000, including some unemployment benefits in 1991.
The wife is 33 years of age, has a high school diploma, and has been diagnosed with brain cancer. According to her testimony, she has been given a one-in-seventeen chance of survival and recovery. As of the time of trial, however, there has been no recurrence of the tumor since her surgery and therapy CT Page 9969 in 1991. She suffers from short-term memory loss and cognitive disabilities and is now unable to work and takes phenobarbital and lasix medication daily. She receives social security disability of $195 per week gross, which includes a $67.85 per week ($294 per month) dependency allowance attributable to the parties' three children. This amount is expected to be paid to the husband as the primary caretaker and custodian of the children. In the past, she has held jobs doing manicures and pedicures, but mostly stayed home and cared for the children as the primary caretaker, doing housework, cooking, and the like. The only significant job she held outside the home during the marriage was at Otis, where she earned about $1,000 per month take home pay doing office work.
This marriage of slightly more than fifteen years got off to a rocky start, as the wife was already then pregnant with the parties' oldest child. The husband was 19, the wife was 18. The marriage was punctuated by separations and the court credits the husband's testimony that the wife's parents aggravated the situation by blaming him for the state of affairs, and by interfering in the parties' marriage. They have apparently continued to do so to the present day, as the two oldest children have great difficulty in visiting their mother who now resides with her parents in Rhode Island, and do not wish to visit her there.
The wife claims that the husband was a "control monster", in that he never let her leave the house, buy her own clothes, handle the family money, etc. The court believes this testimony to be somewhat exaggerated, but also believes that the husband did in fact take a more dominant role in their relationship. The wife also claims that the husband verbally and physically abused her. Despite their difficulties and the stresses upon them, they appeared to reconcile after a number of separations, including one after the wife engaged in an extramarital affair in 1989. Shortly thereafter, she commenced an action for dissolution, which was withdrawn. However, the wife's affair was the straw that broken this very fragile camel's back, the parties promptly separated, went back together for a short time, and they finally separated in August. The marriage has clearly broken down irretrievably, and there is no reasonable likelihood of reconciliation. The court concludes from this evidence, that although both parties share some responsibility for the breakdown of their marriage, a larger share of the responsibility must be borne by the defendant wife. CT Page 9970
The father now has custody of the three minor children, and he transports them to visit with their mother in Rhode Island. The children are all honor students. The parties have agreed on the record that joint legal custody of the minor children be awarded to them, with primary physical custody to the father, and reasonable rights of visitation to the mother. Therefore, the statutory presumption that such joint custody is in the children's best interests arises, and the court so finds from the evidence.
The parties have no assets of any substance, as appears from their financial affidavits; the wife has a six-year-old car worth $2,000 and $300 in the bank. The husband has a five-year-old car with over 150,000 miles on it and he now commutes over 100 miles per day to work. He also has a pension plan which would provide him with $139.93 per month upon his retirement at age 55. It has minimal present value. The husband obviously has earning capacity superior to that of the wife, but with defense and other market cutbacks, his earning capacity in his present line of work in the future appears uncertain. He has sent out numerous resumes, with little response. Although the husband shows a $120 per week expense for health and medical insurance for himself and his family, he is presently unable to keep it in force. Fortunately, the wife is now eligible for health insurance coverage for herself through medicare which will cost $42 per month.
The parties have substantial liabilities, the husband, over $42,000, the wife, $9,600.
The court finds an arrearage for past due alimony and reimbursement for health coverage premiums due the wife in the amount of $742 plus $162.50 respectively, for a total due of $904.50. The court and the parties were uncertain as to the effect of pendente lite and permanent alimony orders of $100 per week upon her social security disability benefits. At the conclusion of the testimony, as the wife's income was sufficient to meet her expenses, the court reduced the present weekly alimony order to $67.85 per week to offset the children's dependency allowance, which was received by her, without prejudice to a final decision. The court also finds that in view of the nature of wife's disability benefits, an alimony award will not adversely affect or diminish her benefit entitlement. The court also referred the issue of visitation to the Family CT Page 9971 Relations Division of the Superior Court for mediation, study and recommendation, and retained jurisdiction over the issue of visitation.
After considering all of the factors in General Statutes 46b-62, 46b-81, 46b-82 and 46b-84, in the light of the evidence and findings, the court believes that the following orders are appropriate in this most tragic case:
A decree dissolving the marriage may enter on the ground of irretrievable breakdown of the marriage.
Joint legal custody of the parties' three minor children is awarded to the parents, with primary physical custody to the father, and reasonable rights of visitation to the mother, which shall be at least one day per week, at mother's residence. The father shall transport the children to and from Rhode Island, and the matter of visitation is referred to the Family Relations Division for mediation, study and recommendation, and the court shall retain jurisdiction on the issue of visitation. The parties shall keep each other informed of any changes of address and telephone numbers. Father shall promptly furnish to mother copies of all school and health records of the children as available.
No child support is ordered at this time, and the husband shall be entitled to the dependency exemptions for the minor children for state and federal income tax purposes.
If available through his employment, the husband shall maintain group health insurance for the benefit of the minor children, and the parents shall pay any unreimbursed or uncovered health expenses for the children in the following ratio: father, eighty (80%) percent; mother, twenty (20%) percent. In the event either parent seeks reimbursement from the other for any health-related expenses paid by him or her, such parent shall send to the other copies of the bills together with a statement of benefits from the insurance company, if any, and an explanation, and payment shall be made by the other parent within thirty days of receipt.
The husband shall be entitled to the children's dependency allowance, presently in the amount of $67.85 per week ($294 per month), so long as he shall have primary physical custody of the children. The wife shall cooperate by executing CT Page 9972 and delivering such documents as may be necessary to effect this order.
The arrearage of $904.50 shall be paid by the husband to the wife in the amount of $15 per week until paid.
The husband shall pay to the wife as periodic alimony the sum of $50 per week. Said alimony payments and additional alimony payments hereinafter ordered shall be taxable income to the wife and deductible by husband.
The husband shall pay to the wife, as additional periodic alimony, the sum of $40 per month for her medicare insurance, and as further additional periodic alimony shall pay one-half of her annual deductibles, up to a maximum of $500 in any one calendar year. Said sum shall be paid within sixty (60) days of presentation to him in writing of copies of the bills and a statement of explanation of benefits. Said alimony and additional alimony payments shall terminate upon wife's death or remarriage or living together with another person within the meaning of General Statutes 46b-86(b), and the additional alimony payments shall not be modifiable as to amount.
Each shall take and have the motor vehicle each has free of the other's claims, together with all personal property in his or her respective possession and the husband shall have his retirement/pension plan free of wife's claims.
Each shall be solely responsible for the liabilities shown in Section 3 of their respective financial affidavits and save the other harmless therefrom.
The parties shall exchange copies of their state and federal income tax returns and W-2 forms on or before March 1 of each year commencing March 1, 1994.
The father shall irrevocably name the minor children beneficiaries of his term life insurance policy shown on his financial affidavit in the face amount of $200,000 or designate a suitable trustee thereon to make it clear that said proceeds, in the event of his death, are held for the use and benefit of the minor children. He shall furnish evidence of this designation to the wife.
The court finds that the claim of the wife's attorney's CT Page 9973 fees in the amount of $5,000 is unwarranted and unreasonable under the difficult and strained financial circumstances presented by this case. After considering the respective financial abilities of the parties, and noting that the father, who has custody of the three minor children with uncertain job security and employment, with no assets and no reasonable prospects of acquiring any in the foreseeable future, and with substantial liabilities, simply does not have the ability to pay attorney's fees in that amount. Moreover, no proof by affidavit or otherwise was offered that the services rendered for which $5,000 is sought were reasonably necessary in the light of the financial circumstances of the parties and the issues presented. "Courts have a general knowledge of what would be reasonable attorney's fees for services which are fairly stated and described." Appliances, Inc. v. Yost, 186 Conn. 673, 680 (1982). Here, the court had the pleadings and affidavits and documentary evidence before it, presided at the trial, and received and considered post-trial briefs. However, the court also finds that a denial of wife's claim for attorney's fees in toto would undermine the other financial awards, and orders that the husband pay to the wife, toward her attorney's fee the sum of $500, which the court finds reasonable, by equal monthly payments of $50 commencing January 1, 1994.
Teller, J.